[No. 29767.   Department Two.   March 14, 1946.]

*In the Matter of the Adoption of* DONNA MAE SIPES.
JOAN SIPES, *Appellant,* v. AMOS A. SHAW *et al.,*
*Respondents.*[1]

[1]Reported in 167 P. (2d) 139.

*S. Edelstein,* for appellant.

*Allen Spratlin,* for respondents.

JEFFERS, J.—On March 24, 1944, Amos A. Shaw and Mary A. Shaw, his wife, acting jointly, filed a petition in the superior court for Okanogan county for the adoption of Donna Mae Sipes. The petition, filed in accordance with Laws of 1943, chapter 268, § 6 (Rem. Supp. 1943, § 1699-7 [P. P. C. § 354-13]), alleged that on March 20, 1944, a baby girl was born to Joan Sipes, an unmarried woman, the child being illegitimate and the father of the child being unknown; that the child's name is Donna Mae Sipes. It is further alleged that Joan Sipes, the mother of the child, has in writing relinquished Donna Mae Sipes to the petitioners and has in writing consented to her adoption by petitioners. The consent to such adoption is by reference made a part of the petition, and a copy of the consent is attached to the petition and reads as follows:

"STATE OF WASHINGTON } ss
"COUNTY OF GRANT }

"JOAN SIPES, being first duly sworn, on oath deposes and says:

"That affiant is the mother of Donna Mae Sipes, born March 20, 1944, at the Coulee Dam Community Hospital (Columbia Clinic) at Coulee Dam, Washington; that said child, Donna Mae Sipes, is illegitimate and her father is unknown. That affiant is an unmarried woman.

"That affiant has released and does hereby release and relinquish any right in said child and to the care and custody thereof, and herewith consents in writing to the adoption of the said baby girl by Amos A. Shaw and Mary A. Shaw, husband and wife.

"I hereby consent that Amos A. Shaw and Mary A. Shaw, husband and wife, may adopt said child, and I hereby relinquish and release any and all rights which I may have or claim in and to said child and to its care and custody, and I hereby voluntarily transmit these rights to the above named Amos A. Shaw and Mary A. Shaw, husband and wife, and that no notice need be given to affiant of any adoption proceedings.

"Witnesses to signature
"V. A. SPRAGUE
"MARIE C. SCOTT                                    JOAN SIPES

"Subscribed and sworn to before me this 21st day of March, 1944.                          ALLEN SPRATLIN
"Notary Public in and for the State of Washington, residing at Grand Coulee."

It is further alleged that petitioners are husband and wife, and are of the Caucasian (white) race; that petitioners are able financially and have the qualifications and ability to care for and educate the child in a proper manner, and that petitioners reside in Okanogan county, Washington; that the child is of the Causasian (white) race. It is further alleged that petitioners are desirous of adopting Donna Mae Sipes and having her name changed to Donna Mae Shaw.

After the filing of the above petition, and on May 16, 1944, the court, in accordance with Laws of 1943, chapter 268, p. 831, § 9 (Rem. Supp. 1943, § 1699-10 [P. P. C. § 354-19]),

appointed Mrs. C. Roy MacMasters as the next friend of the child.

Pursuant to the provisions of the section last above referred to, Mrs. MacMasters, on May 25, 1944, filed a report of her investigation, from which it appears that in 1940 Mr. and Mrs. Shaw had adopted another child, of whom they had taken excellent care; that the adopters have a good reputation in the community in which they live; that each of the adopters is in good health; that Mr. Shaw is forty-three years of age and Mrs. Shaw forty-two, and it is the conclusion of Mrs. MacMasters that petitioners will make good parents for Donna Mae Sipes.

The written consent of the mother providing that no notice need be given her of any adoption proceedings, the matter came on for hearing on August 1, 1944, at which time the petitioners were present in court with Donna Mae Sipes; and the court, having heard testimony and having considered the written consent of the mother and the report of the next friend, made and entered a decree of adoption, wherein the name of the child was changed to Donna Mae Shaw. The decree specifically provided that it should remain interlocutory for a period of six months from the date of its entry, as required by Laws of 1943, p. 831, chapter 268, § 11 (Rem. Supp. 1943, § 1699-12 [P. P. C. § 354-23]).

On January 5, 1945, the mother, Joan Sipes, filed in the above cause a verified petition to vacate and set aside the decree of adoption. The petition to vacate was filed pursuant to the provisions of the section last above referred to, which, in so far as applicable to the petition to vacate, provides:

"At any time prior to the expiration of six months from entry of such decree [of adoption], any interested person may file in the adoption proceedings his verified petition alleging grounds, if any he has, for the vacation or modification of such decree. Upon the filing of such petition, the Court shall, upon application, fix a time for hearing thereon. At least ten days' notice of such hearing shall be served upon *all of the parties* to the adoption proceeding and to the persons served as provided in section 8 hereof, and also

*upon the person making the report of investigation pursuant to section 9."* (Italics ours.)

On January 6, 1945, a citation in the nature of a show cause order was issued, directed to Mr. and Mrs. Shaw, requiring them to appear on or before February 13, 1945, and show cause, if any they had, why the petition to vacate the decree of adoption should not be granted. No notice of the above hearing was ever served upon Mrs. MacMasters, the duly appointed next friend of the child.

The petition to vacate is based upon two grounds, the first of which is:

"That at no time prior to this date has the petitioner [Joan Sipes] requested leave to relinquish said child nor has any order of relinquishment been entered by any court authorizing the relinquishment of said child by this petitioner as required by chapters 162 and 163 of the Session Laws of 1939 of the state of Washington, and said decree of adoption is null and void as against this petitioner."

The second ground is that the consent to the adoption of Donna Mae Sipes was obtained from petitioner by Mrs. Shaw by misrepresentations and undue influence.

Mr. and Mrs. Shaw appeared in answer to the show cause order and filed a demurrer, and also an answer, to the petition to vacate. By their answer, Mr. and Mrs. Shaw denied that the decree of adoption was void for the reason asserted, and denied that any misrepresentation had been made by them or any undue influence used in obtaining from Joan Sipes the consent to adoption.

The cause came on for hearing on March 2, 1945, at which time Joan Sipes was present in court and represented by counsel. Miss Sipes and Mrs. Thelma Cheuvrant testified in behalf of petitioner. Certain letters written by Mrs. Shaw to petitioner were introduced in evidence. Mr. and Mrs. Shaw and one M. S. Parmeter testified in behalf of the Shaws.

At the close of the hearing, the court took the case under advisement and thereafter, on April 10, 1945, filed a very comprehensive memorandum decision, in which the facts and the law are discussed at length. On June 8, 1945,

the court filed a supplemental memorandum decision and, on the same day, filed its final order and decree, wherein the court denied the petition to vacate the decree of adoption and confirmed the decree of adoption as entered. On January 19, 1945, Joan Sipes appealed to this court from the decree denying her petition to vacate.

We shall hereinafter refer to Miss Sipes by name or as appellant, and to Mr. and Mrs. Shaw as respondents.

The assignments of error are: (1) that the informal findings of fact, incorporated in the memorandum decision of April 10, 1945, are contrary to the evidence in the case; (2) that the informal conclusions of law, incorporated in the memorandum decision of April 10, 1945, and in the final order of the court filed June 8, 1945, are not supported by the facts in the case and are contrary to law; (3) that the court erred in making and entering its final order of June 8, 1945, denying appellant's petition and confirming and continuing in force the decree of adoption of August 1, 1944.

We desire to say here, in reference to appellant's assignments of error, in so far as they refer to informal findings of fact or conclusions of law incorporated in the court's memorandum decision, that we have not considered them as formal findings of fact or conclusions of law. We do not approve the practice of attempting to enlarge findings of fact or conclusions of law by reference to a memorandum decision. A memorandum decision constitutes neither findings of fact, conclusions of law, nor a judgment, and is not intended to, nor does it, take the place of formal findings of fact, conclusions of law, or judgment. A memorandum decision very often is of benefit to this court in informing it of the theory of the trial court, and in giving to this court the trial court's observations in regard to the evidence.

This being an equity case, no findings of fact or conclusions of law are required, but only a decree. While the decree entered in this case, from which this appeal is taken, contains certain observations relative to the facts and a reference to the memorandum decision of April 10th, in reaching our conclusions we have not considered that

any formal findings of fact or conclusions of law were made, and have examined the entire record for the purpose of determining whether or not the judgment entered is substantially supported by the evidence.

The first question to be answered, as stated by appellant, is: Can the mother of an illegitimate child execute a valid consent sufficient to give the court jurisdiction of an adoption proceeding, without first securing the order of relinquishment required by Laws of 1939, chapter 162, p. 485?

It is admitted that Donna Mae Sipes is the illegitimate child of appellant, and that appellant executed and delivered to respondents her ·consent for the adoption of this child by respondents. It is also admitted that the provisions of Laws of 1939, chapter 162 (Rem. Rev. Stat. (Sup.), §§ 1700-1 to 1700-6 [P. P. C. §§ 358-1 to 358-11]) were not complied with either before the consent was given or the order of adoption entered.

The question here presented is one of first impression in this state. It is a question which, according to the statement of counsel, has been decided differently by various trial courts in this state.

It may be admitted that adoption proceedings are purely statutory (*State ex rel. Van Cleave v. Frater*, 21 Wn. (2d) 231, 150 P. (2d) 391), and that the law must be strictly complied with.

Chapter 162, Laws of 1939, which appellant contends must be complied with before the court has jurisdiction to hear and determine a petition for adoption, is entitled:

"An Act relating to the welfare of minor children, their care, custody, control and adoption, and providing penalties; amending sections 1, 4 and 5 of chapter 150 of the Laws of 1935 and declaring an emergency."

Section 1 provides:

"It shall be unlawful for any person, firm, society, association or corporation, except the parents, to assume the permanent care, custody or control of any child under the age of majority, unless authorized so to do by a written order of a superior court of the state. It shall be unlawful, without the written order of the superior court having

first been obtained, for any parent or parents to in anywise relinquish or transfer to another person, firm, society, association or corporation, the permanent care, custody or control of any child under the age of majority, and any such relinquishment or transfer shall be void: *Provided, however,* That where one spouse shall petition a superior court to adopt the child of the other spouse, no order for relinquishment or transfer shall be necessary, but the duly signed and verified joinder by such other spouse in such petition to adopt, and the order of adoption shall constitute a sufficient relinquishment and transfer for the purposes of this act, and shall be conclusive as to the consent of such other spouse and the authorization and approval of said superior court to such transfer: *And provided, further,* That waivers and relinquishments heretofore signed by the parent or parents of said children or child shall be given the same force and effect as would be given prior to the enactment of this law. None of the court proceedings in conformity with this section shall be open to the public unless otherwise directed by the presiding judge."

It will be noticed that the above section, with one exception to which we shall later refer, does not purport to cover the matter of adoption, but makes it unlawful for

". . . any person, firm, society, association or corporation, except the parents, to assume the *permanent care, custody or control* of any child under the age of majority, unless authorized so to do by a written order of a superior court of the state." (Italics ours.)

It also makes it unlawful

". . . without the written order of the superior court having first been obtained, for any parent or parents to in anywise relinquish or transfer to another person, firm, society, association or corporation, the *permanent care,* custody or control of any child under the age of majority, and any such relinquishment or transfer shall be void." (Italics ours.)

The only reference to adoption found in the above section is contained in the following proviso:

"*Provided, however,* That where one spouse shall petition a superior court to adopt the child of the other spouse, no order for relinquishment or transfer shall be necessary, but the duly signed and verified joinder by such other spouse in such petition to adopt, and the order of adoption shall

constitute a sufficient relinquishment and transfer for the purposes of this act, and shall be conclusive as to the consent of such other spouse and the authorization and approval of said superior court to such transfer."

Reference to adoption is also contained in § 3 of the act.

A careful examination of chapter 162, *supra*, almost conclusively indicates that the purpose of the chapter and the entire act, of which that chapter is a part, was to prevent the relinquishing of children to persons, associations, etc., who did not desire to, and who could not in fact, adopt such children, but who procured the permanent care, custody, or control of minor children and thereafter placed them out for adoption. In other words, to state the matter frankly, the purpose of the act was to prevent the bartering of minor children.

We are further of the opinion that chapter 162 was never intended to apply to a situation such as here presented, where the parent, who was legally entitled to consent to the adoption, had given that consent in writing, and the adopters then proceeded under the adoption laws to obtain an order of court authorizing the adoption.

We also call attention to the last paragraph of § 3, chapter 162, *supra*, which provides:

"When a petition for adoption is filed, the court shall enter its order of relinquishment and transfer forthwith: *Provided*, There is filed with the petition the written waiver of the parent or parents of the person to be adopted."

The history of the act, of which chapter 162, Laws of 1939, is a part, can be traced back to chapter 62, Laws of 1933, p. 332, § 1 of which reads in part as follows:

"It shall be unlawful for any person, firm, society, association or corporation, except the parents, or relatives within the second degree, or a benevolent or charitable society incorporated under the laws of this state for the purpose of, and engaged in the business of, receiving, caring for, and placing out for adoption, orphan, homeless, neglected, abandoned or abused minor children, to assume the *permanent* care, custody, or control of any child under fourteen (14) years of age, unless authorized to do so by an order of the court." (Italics ours.)

Certain amendments to the 1933 act were made by the legislatures of 1935 and 1939, but the purpose of the act, in our opinion, remained the same, namely, to prohibit the trafficking in children, especially orphan, homeless, neglected, or abandoned children, by those who had assumed the permanent care, custody, or control of such minor or minors, but who were not themselves authorized to adopt such minor or minors.

It may be noted that on the same day that chapter 162, Laws of 1939, became effective, chapter 163, p. 488, Laws of 1939, also became effective. Chapter 163 is entitled: "ADOPTION OF CHILDREN. An Act relating to adoption; providing for investigation; . . ."

Section 1 of chapter 163 (Rem. Rev. Stat. (Sup.), § 1696), purports to state under what conditions any inhabitant of this state may petition the superior court for leave to adopt. This section makes no reference to the order required by chapter 162, *supra*, but only requires the written consent of the person to be adopted, if of the age of fourteen years, and, if under the age of twenty-one years, by each of his or her living parents, or, in case the child be illegitimate, by his or her living mother. Then follow certain provisions relating to conditions under which the consent of the parent or parents shall not be required. This chapter, however, was repealed by chapter 268, Laws of 1943, § 16, p. 834.

We now come to chapter 268, p. 828, Laws of 1943 (Rem. Supp. 1943, §§ 1699-1 to 1699-17 [P. P. C. §§ 354f-1 to 354f-33]), which purports to be a complete act covering the matter of adoption. Chapter 268 provides in part as follows:

"Section 1. This act may be known and cited as 'The Washington State Adoption Act.' . . .

"Sec. 2. Any person not married, or any husband and wife jointly, or either spouse, when the object of adoption is the child of the other spouse, may petition the Superior Court of the county in which such petitioner is a resident, or of the county in which the person to be adopted resides, for leave to adopt, and to change the name, if desired, of any person.

"Sec. 3. Written consent to such adoption must be filed prior to a hearing on such petition, as follows:

"(a) By the person to be adopted, if such person be fourteen (14) years of age or older, but the filing of such consent shall not obviate the necessity of securing any other consent herein required; . . .

"(c) If the person to be adopted be illegitimate and a minor, then by his mother, if living, except as hereinafter provided;

"(d) If a legal guardian has been appointed for the person of said child, then by such guardian.

"Sec. 4. No consent for the adoption of a minor shall be required as follows: [Then follow certain provisions not here material.] . . .

"Sec. 6. An adoption proceeding shall be instituted by filing a petition in the Superior Court of the proper county. Such petition shall contain allegations as to all requisite facts, including the new name, if any, to be given the child, the qualifications and race of the adopter, the race of the child, and shall be signed and verified under oath by the proposed adopter. If the petition be by one spouse to adopt a child of the other spouse, then it shall be approved under oath by such other spouse.

"Sec. 7. Said petition shall be accompanied by such written consent as may be required and available, or by a certified copy of whatever records are alleged to show no necessity of consent. . . ."

Section 8 provides for the giving of notice of any hearing under the act to any nonconsenting parent or guardian, if any, or any person or association having the care, custody, or control of such child.

Section 9 provides for the appointment by the court of an approved agency or any other suitable and proper person, as next friend of the child, to make a complete investigation and report relative to the proposed adoption, such report to be filed within ten days, unless the time is extended by the court.

The act further provides:

"Sec. 10. If such report shall be adverse to granting adoption, then, if requested by the adopter, a hearing shall be had upon the petition for adoption, either in chambers or in open court, as the adopter may in writing elect, the same to be conducted according to the general rules appli-

cable to court hearings, at a time to be fixed by the Court.

"Sec. 11. Upon the conclusion of such hearing, if had, or upon filing the report of investigation, if any, or as soon as the procedure hereunder may permit, the Court shall enter its decree either granting or denying the petition for adoption and change of name, if any, all as in its discretion it shall deem proper. If the decree be for adoption, it shall provide:

"(a) For the issuance of a birth certificate by the state department of registration of births, in such form and containing such information as the Court may deem proper and by such decree shall direct;

"(b) Whether or not any of the records of the said department of registration of births shall be secret; and if any be directed to be secret, then the same shall be disclosed only upon order of Court for good cause shown;

"(c) That such adoption shall remain interlocutory for six months from date of entry of such decree, and shall become absolute at the expiration of said six months. . . . "

Respondents instituted this proceeding under the provisions of chapter 268, *supra*. Their petition complied with the requirements of §§ 6 and 7 thereof. The court appointed a next friend for the child, as provided by § 9, and such next friend filed a report as required by § 9, which report was favorable to the adoption. The decree of adoption entered complied with § 11 of the act.

■ ■ Chapter 162, Laws of 1939, does not, nor does any other law, give to any firm, society, association, or corporation the right to adopt a child; it only gives to such firm, society, association, or corporation the right, under certain conditions, to assume the *permanent care, custody, or control* of a child under the age of majority.

■ By chapter 268, *supra, any person* not married, or any *husband and wife jointly,* may petition the court to adopt a child, and, when any of the persons last above named so petition, we are of the opinion it is not necessary, in order to give the court jurisdiction to hear and determine whether or not the adoption be permitted, that either the adopters or the parent or parents of the child to be adopted first procure a written order of the court as required by chapter 162, *supra*.

We conclude that the requirement of a written order of the superior court provided for in chapter 162, *supra,* applies only to a person, firm, society, association, or corporation who desires to assume the *permanent care, custody, or control of a child under the age of majority,* or to a parent or parents who desire to relinquish to another person, firm, association, or corporation the *permanent care,* etc., of a child under the age of majority, and that chapter 162 has no application to a proceeding instituted under chapter 268, *supra,* by a petitioner or petitioners named therein.

We are therefore of the opinion that the decree of adoption entered herein was regular and valid, and that the judgment of the court denying the petition to vacate such decree must be affirmed, unless appellant's second contention is upheld.

Appellant's second contention is that in any event the decree of adoption should be set aside because the consent to the adoption was procured by misrepresentation, fraud, deceit, and overreaching on the part of the Shaws, and especially on the part of Mrs. Shaw.

At the time of the hearing, appellant was nearly twenty-four years of age, and was living and working in Spokane. She had not only a high school education, but she had three years at the University of Idaho.

Appellant testified that she first contacted the Shaws in December, 1943; that she saw an ad in the Spokesman Review to the effect that respondents desired to adopt a baby; that she wrote to the address given, and thereafter carried on some correspondence with Mrs. Shaw; that finally, about January 16 or 17, 1944, she went to the Shaw home, in Okanogan county, where she stayed until March 20, 1944, on which date her baby was born. It also appears that after appellant was released from the hospital she went back to the Shaw home, where she lived for about a week before going back to Spokane.

It is quite apparent from the record that at the time appellant executed the consent to the adoption of her child by respondents, appellant had had every opportunity to judge of the qualifications of respondents and their

ability to make a good home for her child, and it is also apparent that appellant never questioned the rights given to respondents by virtue of the decree of adoption, until about July, 1944, and possibly not until later than that.

One of the grounds upon which appellant bases her second contention is that it was agreed between Mrs. Shaw and appellant that appellant should have the right to visit and associate with the child. We quote from appellant's testimony relative to this claimed agreement:

"Q. What did Mrs. Shaw say she would do if you consented, relative to your having the right to visit the child and associate with it? A. At that time we were friendly and we talked it over. I told her I wanted to keep in contact with the child and I wanted to give it a home and security; that I wanted to know where it was and help out when I could and she thought my attitude was good and I could do that as long as I didn't tell the child that I was the mother until a suitable time when it would be all right for the child to know it. . . . Q. Was that the reason you consented to the adoption of this baby? A. That was the only reason."

Mrs. Shaw denied that any such agreement was ever made, and Mr. Shaw testified that he knew of no such agreement, although he also testified that he had very little to do with making the arrangements for the adoption of the baby.

Appellant was permitted to see and visit the child in the Shaw home and at times when Mrs. Shaw had the baby in Spokane for medical treatment, from the time of the adoption until September, 1944. Appellant testified she wrote several letters to the Shaws in July, August, and September, of 1944, but received no reply, and that about September 2, 1944, she went to the Shaw home to see the child, but that Mrs. Shaw would not let her in the house or permit her to see the child.

Both Mr. and Mrs. Shaw testified that they made no misrepresentations to appellant to induce her to execute the consent, nor did they attempt to unduly influence her in any way, but that the consent was given by appellant freely and voluntarily.

Mrs. Shaw testified that she refused to permit appellant to come to the home because she was carrying stories to Mr. Shaw of things that she claimed Mrs. Shaw had said, and stories to Mrs. Shaw of statements claimed to have been made by Mr. Shaw. Mr. Shaw testified that the things appellant told him about his wife were false, such as that his wife had taken money unbeknown to him and spent it; that his wife had lied to him.

Appellant also contends that she was confused as to just what was meant by "adopting"; that she did not know that an adoption could make her give up the child completely.

In view of appellant's general background, the opportunity she had of obtaining information while in the Shaw home and elsewhere, and in view of the further fact that the Shaws all this time had a little boy in their home whom they had adopted, it is difficult for us to believe that appellant did not realize the effect of adoption proceedings; but regardless of her contention, we are unable to say from the record that the trial court erred in concluding that appellant was not overreached or in any manner unfairly dealt with by respondents.

Thirteen letters were introduced in evidence as petitioner's exhibit No. 7. These letters were written by Mrs. Shaw to appellant between April 8 and June 9, 1944, and prior to the time any trouble arose between appellant and the Shaws. In our opinion, they add nothing to the testimony relative to the relations which existed during that period between the Shaws and appellant. The letters indicate a most friendly feeling on the part of Mrs. Shaw toward appellant, and contain the usual references to things occuring in the home and to this child. There is nothing to indicate that the letters were written other than because Mrs. Shaw believed appellant was interested in the things occurring in the home and in the development of the child.

It may be admitted that, at the time of the hearing before the trial court, appellant was earning sufficient to provide for the care and support of the child, and it may also be admitted that, in so far as the record shows, Mr. and

Mrs. Cheuvrant, with whom appellant lived for some years, and with whom she said she would place the child, are excellent people, but these facts constitute no ground for vacating the decree of adoption.

We are in accord with the conclusion of the trial court that the evidence does not support appellant's second contention.

Some question is raised by respondents in regard to the failure to serve the next friend of the child with notice of the hearing on the petition to vacate the decree of adoption. The trial court did not find it necessary to and did not pass upon the question of whether or not the requirement that the next friend be notified of such hearing is a jurisdictional step which must be complied with, and in view of our conclusions we do not pass upon this question. We do, however, call particular attention to the fact that the statute requires that notice of the hearing on a petition to vacate a decree of adoption be given to the next friend of the child to be adopted.

For the reasons herein assigned, the judgment of the trial court is affirmed.

DRIVER, C. J., BEALS, BLAKE, and ROBINSON, JJ., concur.