69 Wn.2d 472 (1966)
418 P.2d 735
NORTHERN PACIFIC TRANSPORT COMPANY, Respondent,
v.
WASHINGTON UTILITIES AND TRANSPORTATION COMMISSION et al., Appellants.[*]
No. 37771.
The Supreme Court of Washington, Department Two.
October 6, 1966.
The Attorney General and Robert E. Simpson, Assistant, for appellant Washington Utilities and Transportation Commission.
George H. Hart (William B. Adams, of counsel), for appellants Black Ball Freight Service et al.
Reaugh, Hart & Allison, George H. Hart, and William Q. Marshall, for appellants Poulsbo-Seattle Auto Freight, Inc., et al.
Dean H. Eastman and Roger J. Crosby, for respondent.
FINLEY, J.
The proper scope of judicial review and control of administrative action virtually defies precise articulation.[1] The modern complexity of human affairs and the correlative necessity and complexity of government regulation have precipitated what amounts to an "administrative law explosion." This appeal from a trial court's reversal of a state administrative body's order typifies the kinds of problems raised by administrative action and subsequent requests for judicial review by segments of the body politic affected by administrative action.
*474 The respondent, the Northern Pacific Transport Company, requested authority from the appellant, the Washington Utilities and Transportation Commission (hereinafter referred to as the commission) to transport general commodities as an irregular route, non-radial service carrier in Kitsap County, and between points in Kitsap County on the one hand and points in Washington on the other hand, except points in Jefferson, Clallam, Whatcom and Skagit Counties. Protests were filed on behalf of several carriers, and the commission held public hearings in Bremerton, Washington, on April 24, 1963, and in Seattle, Washington, on May 21, 1963. By an order dated June 12, 1963, the commission denied the application and authority requested thereunder by the applicant Northern Pacific Transport Company. The following portion of the "Findings of Fact and Conclusions of Law" section of the commission order sets out the reasons for the refusal to grant the extension of carrier authority to the applicant:
2. The area requested in the application is presently being serviced by regular route, scheduled carriers of general freight, and the service now being rendered them is essential to the interest of the shipping public.
3. Testimony of record establishes that the granting of the requested authority would authorize destructive competitive practice and is not in the interest of the shipping public.
4. The granting of this application would tend to impair the stability and dependability of the existing essential service in the requested territory.
The respondent obtained a writ of review in the Superior Court for Thurston County. Following the submission of briefs and oral argument, that court reversed the commission's order, and remanded. The commission and the protesting and intervening carriers have appealed.
Initially, it should be noted that the proceedings before the commission were governed by provisions of RCW 81.80.070 which were in effect prior to the amendment of that section by ch. 242 of the Laws of 1963. Consequently, the standard established by the legislature in delegating motor carrier licensing authority to the commission did not include *475 "public convenience and necessity." RCW 81.80.070 then read as follows:
Nothing contained in this chapter shall be construed to confer upon any person or persons the exclusive right or privilege of transporting property for compensation over the public highways of the state, but the commission may deny an application when it appears clearly, after public hearing, that the additional service would unreasonably congest the highways or tend to impair the stability and dependability of the service essential to the public needs.

The commission shall also consider the amount and type of service rendered in any area by any class of service and may deny an application for permit or extension, if it appears that the grant of such permit or extension would not be in the interest of the shipping public or would tend to impair the stability or dependability of existing service essential to the public needs or requirements. (Italics ours.)
As a further preliminary matter it should be noted that there is a distinction between the type of carriage authority requested by the respondent  the irregular route, nonscheduled carrier  and the type of authority possessed by most of the existing carriers in the area  regular route, scheduled carrier. In its "Rules and Regulations Governing Motor Freight Carriers Operating Under Permit," (Appendix A), the commission defines a regular route scheduled service carrier as
any person who or which undertakes to transport property or any class or classes of property by motor vehicle for compensation between fixed termini or over a regular route or routes upon established or fixed schedules. (Italics ours.)
An irregular route, non-radial service carrier is defined as
any person who or which undertakes to transport property or any class or classes of property by motor vehicle for compensation over irregular routes between points or communities located within such general territory as shall have been defined geographically and authorized in a permit, and any other points or communities located within the same general territory without respect to a hub community or a fixed base point of operation.
*476 Even a layman unacquainted with the esoteric nuances of public-carrier transportation of property for compensation can recognize the fact that a regular-route-scheduled carrier must run according to the prescribed schedule and over the previously outlined route, regardless of the amount of traffic available to be hauled at any given time. On the other hand, the irregular-route, nonscheduled carrier is entitled to wait until it has a full load  and it would seem that a carrier with such authority would be well advised to make only the trips that were financially remunerative; i.e., where the amount of traffic to be handled would be more than sufficient to meet expenses and, presumably, would provide a margin of profit.
The superior court in reversing the commission's order denying the requested authority focused essentially on two grounds: (1) that the commission in arriving at its decision had considered evidentiary matter not a part of the record, and had thereby denied the applicant procedural due process; and (2) that the commission had acted arbitrarily and capriciously in entering findings of fact and conclusions of law which were unsupported by the record.
We are convinced that the Superior Court for Thurston County misconstrued, at least in part, the role of the superior court in reviewing the action by a state administrative agency and that the reversal of the commissioner's order should, in turn, be reversed.
[1] By statute (RCW 81.04.430), the findings of fact made by the Washington Utilities and Transportation Commission are made prima facie correct, and the burden is upon the one attacking the finding, order, or decision to show that it is unlawful, unsupported by material and substantial evidence, or is arbitrary and capricious. City Sanitary Serv. Inc., v. Washington Util. & Transp. Comm'n, 64 Wn.2d 739, 393 P.2d 952 (1964); Herrett Trucking Co. v. Washington Pub. Serv. Comm'n, 61 Wn.2d 234, 377 P.2d 871 (1963); State ex rel. Arrow Transp. Co. of Delaware v. Washington Util. & Transp. Comm'n, 60 Wn.2d 825, 376 P.2d 433 (1962). Even in the absence of this statutory presumption, the decision of the commission should and *477 would be afforded considerable weight in the light of the administrative expertise which the members of the commission have acquired in dealing with the complex problems associated with grants and denials concerning motor carrier authority. State ex rel. Country Club of Seattle v. Department of Pub. Serv., 198 Wash. 37, 86 P.2d 1104 (1939). Furthermore, it is the administrative agency and not the reviewing court which had personal contact with the parties and the witnesses during the course of the public hearings.
The presumption thus statutorily and logically accorded commission findings and conclusions does not place this court or the reviewing superior court in the role of a mere rubber stamp, acquiescing in blind, rigid obeisance to the omnipotent expertise of the particular administrative agency involved. But it does mean that this court will not substitute its judgment for the judgment of the commission (or any other agency) on a disputed factual issue. State ex rel. Byram v. Department of Pub. Works, 144 Wash. 219, 257 Pac. 634 (1927); Pacific Coast Elevator Co. v. Department of Pub. Works, 130 Wash. 620, 228 Pac. 1022 (1924).
[2] The Administrative Procedure Act, codified in RCW Title 34, is germane to any attempt to set out the scope of judicial review of state administrative action. This court has held, with an exception not pertinent for purposes of this appeal, that the provisions of the act govern judicial review of action taken by the Washington Utilities and Transportation Commission. Herrett Trucking Co. v. Washington Pub. Serv. Comm'n, 58 Wn.2d 542, 364 P.2d 505 (1961). RCW 34.04.130(6) reads:
The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
(a) in violation of constitutional provisions; or

*478 (b) in excess of the statutory authority or jurisdiction of the agency; or
(c) made upon unlawful procedure; or
(d) affected by other error of law; or
(e) unsupported by material and substantial evidence in view of the entire record as submitted; or
(f) arbitrary or capricious.
Obviously, these so-called standards are somewhat less than all-encompassing and definitive. Case-by-case amplification and clarification are necessary.
[3, 4] One of the grounds for the superior court's reversal of the commission's order was that the commission's findings of fact and conclusions of law were unsupported by the record, and that the commission was arbitrary and capricious in making the same. In State ex rel. Arrow Transp. v. Washington Util. & Transp. Comm'n, supra, we stated (page 830):

Arbitrary and capricious action on the part of an administrative agency is wilful and unreasoning action, in disregard of facts and circumstances. Lillions v. Gibbs, 47 Wn. (2d) 629, 289 P. (2d) 203 (1955). Action is not arbitrary and capricious when exercised honestly and upon due consideration of the facts and circumstances. Smith v. Hollenbeck, 48 Wn. (2d) 461, 294 P. (2d) 921 (1956); Lillions v. Gibbs, supra; Straub v. Department of Public Welfare, 31 Wn. (2d) 707, 198 P. (2d) 817 (1948). (Italics ours.)
The trial court amalgamated subsections (e) and (f) of RCW 34.04.130(6) in listing the grounds for reversal of the commission's order. The question of whether or not an administrative body's decision is supported "by material and substantial evidence in view of the entire record as submitted" (subsection (e)) should be distinguished from a reversal or review on the ground that the action of an agency was "arbitrary and/or capricious." (Subsection (f)). The difficulty, of course, is that the "legalese" labels, arbitrary and capricious, do not operate automatically, but involve an underlying process of judicial evaluation and application. Thus the terms, arbitrary and/or capricious can sometimes disguise the underlying policy components *479 or details of a decision by a court that a particular administrative agency's decision was ill advised or incorrect. But, if we adhere to the above-quoted delimitation of subsection (f) of RCW 34.04.130(6), it would seem safe to predict that it would be a rare occasion to find evidence in the record that an agency took "wilful and unreasoning action, in disregard of facts and circumstances." Certainly we find no evidence in the record presently before us to justify a conclusion that the commission acted in such a manner.
In addition, we think the trial court was in error in concluding that the commission's order was not supported by the record. Although the evidence is somewhat conflicting, the record does support the conclusion that the area requested in the application is presently being serviced by three regular-route, scheduled carriers of general freight, and that the service being rendered by them is essential to the interest of the shipping public. Furthermore, we think there is ample evidence to support the conclusion that the grant of irregular-route authority to Northern Pacific Transport Company would have an adverse effect on the transportation service presently available to the public. All of the existing carriers testified to the effect that increased competition in recent years had caused them to curtail the service formerly rendered by them. It should also be noted that the prospective shippers summoned as witnesses by the applicant testified that, although they desired increased competition, they did not want any curtailment of the existing service.
[5] In addition, it should be remembered that irregular-route authority was requested. The commission was fully justified in concluding that such authority would allow "selective carriage" by the applicant  that is, simply taking the better loads and the loads that assure a profit. We conclude that there is substantial evidence in the record to support the conclusion of the commission that a grant of the requested authority would "tend to impair the stability and dependability of the service essential to the public needs." Furthermore, the policy pronouncement of RCW 81.80.020 stresses the requirement that sound economic *480 conditions be fostered in the public interest, and that there be no promotion of unfair or destructive competitive practices. Competitive practices which would impair the transportation service presently available to the public fall within the ambit of "unfair or destructive competitive practices." State ex rel. Adams Transport, Inc. v. Washington Pub. Serv. Comm'n, 54 Wn.2d 382, 340 P.2d 784 (1959). There was a distinct possibility, if not a probability, that the present service in and from Kitsap County would have been impaired had the commission granted irregular route, nonscheduled authority to Northern Pacific Transport Company.
[6] The trial court also concluded that the respondent had been denied procedural due process because the commission considered evidentiary matter not a part of the record in arriving at its decision. The opinion portion of the commission's order does make reference to the large number of similar applications filed with the commission and the effect on the area in question should all of these applications be granted. Less than precise draftsmanship of commission orders invites the kind of contention made by the respondent and accepted by the trial court. Certainly the existence of other applications for similar authority in the same area is a part of the expert knowledge which the commission will acquire in the course of the administrative process. But such knowledge or expertise must not be relied upon in determining the application before the commission. In other words, the factual basis of each commission order must be the record established by the public hearings held thereon  and not the facts established by hearings held on other applications. We are convinced that the "Findings of Fact and Conclusions of Law" section of the commission order herein amply demonstrates that the factual basis for the denial was the record established by the hearings of April 24 and May 31, 1963; consequently, the applicant was not denied procedural due process. Ward Transport v. United States, 125 F. Supp. 363 (1954); aff'd per curiam 348 U.S. 979 (1955); *481 State ex rel. Country Club of Seattle v. Department of Pub. Serv., supra.
[7] The remaining issue concerns the problem of whether a reviewing superior court ought to incorporate by reference a memorandum opinion in making so-called findings of fact. The distinction, if realistically there is any, between law and fact  a difficult segregation at best  becomes even more artificial in administrative law. By the very nature of judicial review, the trial court and this court on appeal will be primarily concerned with so-called questions of "law" and not with questions of "fact" in reviewing administrative agency decisions. "Accordingly, one basic approach to judicial review is that questions of law are reserved for the court, while questions of fact, policy, or discretion are determinable by the administrative agency." 2 Am.Jur.2d Administrative Law § 555 (1962). Nevertheless, the aforementioned overlap between "law" and "fact" in administrative law, coupled with the key problem of determining the legal significance or importance of the "fact findings," makes precise findings of fact and conclusions of law an essential part of a trial court record presented to us on appeal. We have previously criticized trial court attempts to enlarge the formal findings of fact by reference to a memorandum decision. Group Health Cooperative of Puget Sound v. King Cy. Medical Soc'y, 39 Wn.2d 586, 237 P.2d 737 (1951); In re Sipes, 24 Wn.2d 603, 167 P.2d 139 (1946). It is helpful to an appellate court to be furnished with memorandum opinions. The same can be said as to orthodox findings of fact and conclusions of law. Consequently, perhaps both (a) memorandum opinions and (b) findings of fact and conclusions of law should be required, and any substitution of memorandum opinions for findings of fact and conclusions of law should be discouraged.
The judgment of the trial court is reversed with directions to reinstate the order of the Washington Public Utilities *482 and Transportation Commission denying the respondent's requested extension of carrier authority.
ROSELLINI, C.J., WEAVER and HUNTER, JJ., and LANGSDORF, J. Pro Tem., concur.
NOTES
[*] Reported in 418 P.2d 735.
[1] Jaffe, Judicial Control of Administrative Action (1965) is a most comprehensive and authoritative treatment of the subject. The author does not attempt a single sentence delineation of the scope of judicial review; instead, the central thesis seems to be that the courts and the agencies have been thrust into a complex legal relationship involving law-making and law-applying as a result of the growth of the administrative process  and that relationship does not lend itself to simple description.