[No. 1516-2. Division Two. April 16, 1976.]

PROPERTY HOLDING & DEVELOPMENT, INC., *Appellant*, v. THE DEPARTMENT OF EMPLOYMENT SECURITY, *Respondent.*

*Robert J. Gunovick* (of *Carrithers & Gunovick*), for appellant.

*Slade Gorton, Attorney General,* and *Joseph Littlemore* and *Barbara Phillips, Assistants,* for respondent.

REED, J.—Property Holding and Development, Inc. (hereafter PHD), appeals an adverse ruling by the Superior Court for Pierce County upholding an assessment for employment taxes levied on commissions paid to its salesmen. The superior court decision affirmed an administrative ruling by a hearing examiner for the Employment Security Department (hereafter Department), entered following a hearing and subsequently affirmed by the Employment Security Commissioner. The pivotal issue on appeal presents a question of first impression in this state. That issue is whether the selling of "units" in limited partnerships in real estate constitutes the services of real estate salesmen for purposes of RCW 50.04.230, which provides in relevant part:

> The term "employment" shall not include service performed by . . . a real estate broker or a *real estate salesman* to the extent he is compensated by commission . . .

(Italics ours.) For the reasons stated herein, we reverse the rulings of the Superior Court and the Department.

The facts giving rise to this dispute are, for the most part, undisputed. PHD is in the business of acquiring and holding parcels of improved and unimproved real property for future development and management. In conducting this business, PHD acquires title to the parcels of real estate through the services of Terraco Properties, Inc. (hereafter Terraco), a wholly owned subsidiary. Donald Hays is the designated real estate broker for Terraco and also serves as a supervisor and corporate officer for the parent company. Although Hays does not directly supervise PHD's salesmen in the sale of limited partnership interests, a task performed by Richard Wells, he is ultimately responsible for the activities of all PHD and Terraco salesmen.

Through the testimony of Hays and Wells at the agency hearing it was determined that the limited partnerships were established in the following manner. After acquisition of the property, title is held in the name of PHD as trustee for the yet to be established limited partnership. At this point PHD's salesmen commence the sale of "units" in the limited partnership to investors from the general public. Each "unit" represents a specific undivided interest in the limited partnership, the total number of units varying from partnership to partnership. After all "units" are sold, the limited partnership is formally created by executing the limited partnership agreement, at which time title to the real estate is conveyed by PHD to the limited partnership and filed in the real estate files of the appropriate county auditor's office. Each investor is listed on the filed agreement as a limited partner. The limited partnership agreement designates PHD as the general partner and as such it functions as developer and manager of the property for the partnership. During the assessment period here in question, approximately 32 limited partnerships were formed in this manner, each partnership holding a single parcel of real estate.

The majority of PHD and Terraco salesmen served in a

dual capacity during the assessment period, selling property on a commission basis for both corporations. Each salesman was a real estate licensee and as such sold conventional real estate interests for Terraco and Donald Hays as its designated broker. This litigation does not involve the salesmen's activities while acting in that capacity. Several of the salesmen also represented PHD in the sale of "units" in limited partnerships. When acting in that capacity, the salesmen were required by the Washington Securities Commission to hold a license to sell securities. The majority of the limited partnership salesmen engaged in such pursuits on a part-time basis and many had other full time occupations ranging from chiropractics to insurance sales. Two of the salesmen operated their own independent real estate agencies. The salesmen conducted the majority of their business outside of the offices of PHD although desks and telephones were available for the salesmen to share.

In a typical sales transaction, the salesman takes a prospective purchaser to the parcel of real estate held by PHD where the purchaser is provided with certain relevant information concerning the property such as traffic counts, appraisal value, or occupancy rates. Should the prospective purchaser decide to buy, a subscription agreement is executed, rather than the typical real estate earnest money agreement. The purchase price for the "unit" is then held in a "bank impound" account as required by the Securities Commission to await the sale of all "units" and the eventual formation of the limited partnership. At this point, the salesman is compensated by PHD in the form of commission at a rate similar to the prevailing rates for real estate commissions. The salesmen receive no compensation or expense money in addition to or other than the commission for each completed sale. In conclusion, the only distinction between the salesmen's services in selling limited partnership interests for PHD and the sale of conventional real estate interests for Terraco is the nature of the agreement executed upon completion of a sale.

From these facts the hearing examiner concluded that

the sale of limited partnership interests did *not* constitute services of real estate salesmen for purposes of RCW 50.04.230. The hearing examiner entered the following conclusions, *inter alia* (1) the limited partners did not acquire specifically identified estates or interests in land, (2) the limited partners were entitled only to share in the profits or losses of the limited partnership and were not entitled to take part in the conduct or control of the partnership business nor to demand, at any time, distribution of the assets of the partnership, except cash, (3) PHD failed to establish that their salesmen were compensated pursuant to an approved real estate commission schedule. On review, the Superior Court affirmed the agency ruling, relying primarily on RCW 25.08.180 which defines an interest in a limited partnership as personal property.

Before we can address the merits of the instant case, we must resolve the parties' dispute concerning the appropriate scope of review of the ruling of the administrative agency. Judicial review of administrative proceedings is governed by the provisions of the administrative procedure act, RCW 34.04. *Kenna v. Department of Employment Security*, 14 Wn. App. 898, 545 P.2d 1248 (1976); *Schuffenhauer v. Department of Employment Security*, 86 Wn.2d 233, 543 P.2d 343 (1975). In particular, RCW 34.04.130 (6) establishes the following guidelines for review of administrative action:

(6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of constitutional provisions; or

(b) in excess of the statutory authority or jurisdiction of the agency; or

(c) made upon unlawful procedure; or

(d) affected by other error of law; or

(e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

(f) arbitrary or capricious.

The Department contends that this court must apply either subsection (e), the "clearly erroneous" test, or subsection (f), the "arbitrary or capricious" test in reviewing the administrative ruling before us. The Department cites *Ancheta v. Daly*, 77 Wn.2d 255, 259, 461 P.2d 531 (1969) and *Northern Pac. Transp. Co. v. State Util. & Transp. Comm'n*, 69 Wn.2d 472, 418 P.2d 735 (1966) to guide this court in applying the suggested tests. Although we accept these cases as representing authoritative explanations of the "clearly erroneous" and "arbitrary or capricious" tests, respectively, we cannot accept the Department's suggestion that we are limited to application of one of these tests to the instant facts.

In determining the appropriate scope of review, an appellate court must begin by ascertaining the nature of the ruling it is being asked to review, *i.e.*, is it a question of fact, a question of law, or a mixed question of fact and law? An analysis of the distinctions between the above groupings was recently undertaken by our Supreme Court in *Leschi Improvement Council v. State Highway Comm'n*, 84 Wn.2d 271, 283, 525 P.2d 774 (1974):

> The first major group consists of "[c]ases . . . where the chief problem is the propriety of an administrative conclusion that raw facts, undisputed or within the agency's power to find, fall under a statutory term as to whose meaning, at least in the particular case, there is little dispute;" The second is "[c]*ases where there is dispute both as to the propriety of the inferences drawn by the agency from the raw facts and as to the meaning of the statutory term* . . ." The third category is that of "[c]ases where the only or principal dispute relates to the meaning of the statutory term . . ." *NLRB v. Marcus Trucking Co.* [286 F.2d 583 (2d Cir. 1961)], *supra* at 590-91. Generally, cases in the first category present questions of fact, those in the third category questions of law, and those in the second mixed questions of law and fact.

(Italics ours.) It is abundantly clear from a review of the briefs and record before us that this appeal presents a mixed question of law and fact. The parties dispute the

inferences drawn by the hearing examiner from the raw facts, *i.e.*, the nature of the services performed by the salesmen, as well as the meaning of the statutory term "service performed by a . . . real estate salesman." In reviewing a mixed question of law and fact, this court is not restricted to the narrow confines of either the "clearly erroneous" or the "arbitrary or capricious" tests. Rather, such a question is properly reviewable under subsection (d) of RCW 34.04.130(6), *supra, i.e.*, this court must determine whether the agency decision is "affected by other error of law." *Department of Revenue v. Boeing Co.*, 85 Wn.2d 663, 667, 538 P.2d 505 (1975).

We now turn to the merits of the case at bench to determine whether the proceedings at the agency level or on review in the superior court were "affected by" error of law. We note at the outset that PHD, both in its brief and during oral argument, relied exclusively on the specific exemption for the *service of a real estate salesman* provided in RCW 50.04.230. We do not, therefore, consider the question whether the services performed by the salesmen in the instant case would constitute "employment" as that term is defined in RCW 50.04.100,[1] nor whether such services would be exempt from the Employment Security Act by satisfying the three-prong exception test of RCW 50.04.140.[2] Rather, we perceive our task as that of ascertain-

[1]RCW 50.04.100 provides:

" 'Employment', subject only to the other provisions of this title, means personal service, of whatever nature, unlimited by the relationship of master and servant as known to the common law or any other legal relationship, including service in interstate commerce, performed for wages or under any contract calling for the performance of personal services, written or oral, express or implied.

"Personal services performed for an employing unit by one or more contractors or subcontractors acting individually or as a partnership, which do not meet the provisions of RCW 50.04.140, shall be considered employment of the employing unit: *Provided, however*, That such contractor or subcontractor shall be an employer under the provisions of this title in respect to personal services performed by individuals for such contractor or subcontractor."

[2]RCW 50.04.140 provides:

"Services performed by an individual for remuneration shall be

ing the legislature's intent in passing RCW 50.04.230[3] and ultimately determining whether the services rendered by PHD's salesmen are in the class of services intended to be exempted.

■■ The decisions of the Superior Court and the Department were based upon what we conclude was an overly technical construction of the exemption statute in question, serving to exalt form over substance. Both tribunals placed great emphasis on their conclusion that a "unit" in a limited partnership is not a specifically identified interest in land. We recognize that multiple ownership of real property in the form of limited partnerships was not recognized at common law as creating specifically identified estates in land. However, we cannot believe that the legislature intended the application of the provisions of the employment security laws to turn upon such fine distinctions. Rather, an examination of the cases which have considered the application of employment security statutes to real estate salesmen reveals that the foremost concerns involve the nature of the services performed by the salesmen and the resulting "employer-employee" relationship, if any. *See, e.g., Coppage v. Riley*, 22 Wn.2d 802, 157 P.2d 977 (1945); *H.J.*

---

deemed to be employment subject to this title unless and until it is shown to the satisfaction of the commissioner that

"(1) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

"(2) such service is either outside the usual course of business for which such service is performed, or that such service is performed outside of all the places of business of the enterprises for which such service is performed; and

"(3) such individual is customarily engaged in an independently established trade, occupation, profession, or business, of the same nature as that involved in the contract of service."

[3]The statute exempting real estate brokers and salesmen was first passed as an amendment to the Employment Security Act in 1943. (Laws of 1943, ch. 65, p. 119.) The exemption was expanded by the legislature in 1945 to include services of insurance agents and solicitors and investment company agents and solicitors. (Laws of 1945, ch. 35, § 24, p. 85.) The 1945 bill was vetoed by the Governor but was passed by the legislature over the Governor's veto in 1947. (Laws of 1947, ch. 5, § 24, p. 7.)

*Bernard Realty Co. v. Director of Employment Security,* 248 A.2d 245 (R.I. 1968); *Niven Realty v. Levine,* 43 App. Div. 2d 1002, 352 N.Y.S.2d 270 (1974); 29 A.L.R.2d 751 (1953). Moreover, we conclude that the Department committed an error of law in refusing to consult the definition of the terms "real estate broker" and "real estate salesman" contained in the statute regulating the activities of such individuals, RCW 18.85.010(1) and (2) and its statutory predecessors. The hearing examiner stated that it would be inappropriate to indiscriminately apply the definition of terms contained in that statute in a case involving the use of the same term in a statute with a totally divergent and unrelated purpose, *i.e.,* the Employment Security Act. We agree that, as a general rule, such indiscriminate cross-referencing may produce results unintended by the legislature. But this is not such a case.

The term in need of definition in the case at bench, "services of a real estate salesman," is left undefined in the Employment Security Act. At the time the exemption from taxation for such services was last enacted in 1947, *see* footnote 3, a real estate salesman was defined in the licensing statute in Laws of 1943, ch. 118, § 2, p. 271 as follows:

(1) A "real estate broker" is a person whose business policies and acts are free from the direction, control or management of another person, who for a compensation or promise thereof, or with intent to collect or receive a compensation or promise thereof, performs one or more acts of selling or offering for sale, buying or offering to buy, negotiating or offering to negotiate, either directly or indirectly, the auction, purchase, sale, exchange, lease or rental of real estate or interest therein for another person, or who shall advertise or hold himself out to the public by any oral or printed solicitation or representation that he is so engaged, or who takes any part in or directs or assists in the procuring of prospects or in the negotiation or closing of any transaction, which does, or is calculated to result in any of the acts above set forth, and hereinafter referred to as a broker.

(2) A "real estate salesman" or "salesman" is any person, other than a corporation, copartnership or unincor-

porated association, who represents a real estate broker in the performance of any of the acts above set forth.

 The legislature is presumed to enact laws with full knowledge of laws then in existence. *Thurston County v. Gorton*, 85 Wn.2d 133, 530 P.2d 309 (1975); *State v. Thornbury*, 190 Wash. 549, 69 P.2d 815 (1937). We feel it is reasonable to assume that the legislature was aware of the definition of "real estate salesman" in effect at the time they passed a statute exempting the services of such individuals from the application of the employment security laws. It is also logical to assume that if the legislature had intended to attribute a narrower meaning to the term than that contained in the licensing statute, thereby exempting only certain services performed by real estate salesmen, they would have expressly done so. We hold, therefore, that RCW 50.04.230 exempts all services legally performed by a duly licensed real estate salesman to the extent they are compensated by commission. We thus turn to an examination of the services performed by the salesman in the instant case to determine whether they meet that definition.

 In the instant case, the services performed by the salesman for PHD involving the sale of limited partnership interests are virtually identical to those performed by any real estate salesman. As noted earlier, the salesmen take the prospective purchasers to the parcel of real estate and offer for sale an interest in that real estate by providing them with relevant information pertaining to the property. Clearly, the salesperson is utilizing his training and expertise in real estate sales to the same degree as he would if offering for sale a "fee simple estate" in the property. The label placed upon the legal title acquired by the purchaser in no way affects the *services* being performed by the salesperson.

We hold, therefore, that the sale of "units" in limited partnerships, the sole assets of which are real property, by licensed real estate brokers or salesmen, constitutes *service*

*of real estate brokers or salesmen* contemplated by RCW 50.04.230. The judgment of the Superior Court is reversed.

PETRIE, C.J., and PEARSON, J., concur.

Petition for rehearing denied December 13, 1976.

Review by Supreme Court pending February 3, 1977.