[No. 5043-1. Division One. April 10, 1978.]

THE CHEMITHON CORPORATION, *Appellant,* v. PUGET
SOUND AIR POLLUTION CONTROL AGENCY,
*Respondent.*

*J. Richard Aramburu,* for appellant.

*Rovai, McGoffin, Turner & Mason* and *Keith D. McGoffin,* for respondent.

RINGOLD, J.—The Washington Clean Air Act, RCW 70.94, vests the Puget Sound Air Pollution Control Agency (hereinafter PSAPCA) with the authority to promulgate rules for the implementation of the directives of the act. The regulations prescribe two methods of determining whether air quality required by the act is being maintained: (1) opacity standards measuring the contaminants by visual criteria, and (2) substantive standards which determine the physical and chemical composition of emissions into the atmosphere. Four violations here involve the interpretation of section 9.03 of regulation 1, "opacity standards," promulgated by PSAPCA. Section 9.03 provides:

Statutes, Regulations and Procedure
Section 9.03 *Emission of Air Contaminant: Visual Standard*
(a) It shall be unlawful for any person to cause or allow the emission of any air contaminant for a period or periods aggregating more than three (3) minutes in any one hour, which is:
(1) Darker in shade than that designated as No. 2 (40% density) on the Ringelmann Chart, as published by the United States Bureau of Mines; or
(b) After July 1, 1975, it shall be unlawful for any person to cause or allow the emission of any air contaminant for a period or periods aggregating more than three (3) minutes in any one hour, which is:
(1) Darker in shade than that designated as No. 1 (20% density) on the Ringelmann Chart, as published by the United States Bureau of Mines; or
(2) Of such opacity as to obscure an observer's view to a degree equal to or greater than does smoke described in Subsection 9.03(b)(1); provided that, 9.03(b)(2) shall not

apply to fuel burning equipment utilizing wood residue when the particulate emission from such equipment is not greater than 0.05 grain per standard cubic foot.

(3) The only exception to 9.03(a) and 9.03(b) shall be that provided by Section 9.16.

. . .

(d) The density or opacity of an air contaminant shall be measured at the point of its emission, except when the point of emission cannot be readily observed, it may be measured at an observable point on the plume nearest the point of emission.

(e) This section shall not apply when the presence of uncombined water is the only reason for the failure of the emission to meet the requirements of this section.

Other sections of regulation 1 establish the substantive standards based on chemical or physical composition of the emissions. An exception is provided under section 9.16 to the opacity standards and to the substantive standards in the case of start–ups, shutdowns, unavoidable failures, upsets or breakdowns. To qualify for the exception, however, the owner or operator "shall immediately notify the agency (PSAPCA) of such occurrence, together with the pertinent facts relating thereto. . . ." Section 9.16(1). Section 3.29 of regulation 1 provides the penalty for violation of the standards set forth in regulation 1.

The claimed violations arose when a PSAPCA inspector made visual opacity readings from smoke plumes emitted into the air at the Chemithon plant.

The four readings were made from public property, using the Ringelmann Chart, specifically adopted by section 9.03, as the basis for the readings. Chemithon was notified in each case, soon after the sightings by the inspector. Thereafter a notice of civil penalty imposing a fine for each violation was issued by PSAPCA. Chemithon then appealed to the Pollution Control Hearings Board (hereinafter Board) which conducted the hearings pursuant to the Washington administrative procedures act, RCW 34.04. After formal de novo hearings, the Board made written findings of fact and decisions sustaining each violation and penalty. Timely

appeal was taken to the Superior Court. Trial, consolidating the four violations, was held upon the record. The trial court entered findings of fact, conclusions of law and judgment, dismissing the appeals. Chemithon appeals to this court.

FACTS

Chemithon is a manufacturer of detergent and equipment used to make detergent. The processing utilizes two stacks whose emissions were the subject of the violations herein. The sulfonator stack uses a chemical and physical process by which active material for both granulated and liquid detergent is produced. The sulfonator stack is equipped with a steam scrubber, the purpose of which is to enlarge mist particles, thereby making them more easily collected. The pure detergent produced by the sulfonation process is mechanically pumped to the second operation of the Chemithon plant, the detergent spray dryer. The spray dryer utilizes a purely physical process, wherein hot air from a furnace is propelled upwards by means of fans which contacts falling detergent paste and dries it.

The PSAPCA inspectors who made the sightings and issued the violations in the four instances in the present case were experts in the field of pollution detection.

Three violations were based on sulfonator emissions. Chemithon urged the applicability of the exception provided in section 9.03(e), excusing violation of the opacity standards when "uncombined water is the *only* reason for the failure of the emissions to meet the requirements of the section." (Italics ours.) At the hearing there was testimony that even during normal operation not *all* mist particles are removed in Chemithon's scrubbing process since the steam before being emitted from the stack does nucleate on mist particles. The Board and the trial court interpreted the exception to be inapplicable unless *all* mist particles are removed. The violations and the civil penalties imposed were sustained.

The fourth violation is based upon failure of emissions from the spray dryer stack to meet the opacity standards. Chemithon contends that the Board erred in finding the violation notwithstanding testimony that during normal operations there would be no impermissible pollutants. The Board found that there was no showing that the spray dryer was operating normally at the time of the violation, thereby upholding the violation.

The first sulfonator emission violation was also upheld at the formal hearing, notwithstanding the fact that Chemithon claimed the breakdown exception. The Board denied by applicability of the exception for unavoidable failures provided in section 9.16 for the reason that Chemithon had not provided notice to the PSAPCA at the time of the breakdown as required by section 9.16(1). We agree with the Board and the trial court.

### ISSUES

1. Was there "error of law" in the findings and conclusions of either the Board or the trial court?

2. Were the findings and conclusions of the Board or of the Superior Court "clearly erroneous?"

3. Did the failure of the PSAPCA inspectors to give notice to Chemithon before taking opacity readings deny Chemithon's right to due process of law?

Chemithon argues the unreliability of opacity standards. At no point in the proceedings has Chemithon urged the invalidity of the clean air act (RCW 70.94) or of section 9.03. Chemithon questions the interpretation and applicability of the regulations as they stand, and we limit our inquiry to these questions.

■ The appellate court applies the same criterion in evaluating the trial court and Board decision as was applied by the trial court. See *Department of Ecology v. Ballard Elks Lodge,* 84 Wn.2d 551, 527 P.2d 1121 (1974).

Judicial review of decisions of the Board are governed by the administrative procedures act, RCW 34.04.130(6):

(6) The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

 (a) in violation of constitutional provisions; or

 (b) in excess of the statutory authority or jurisdiction of the agency; or

 (c) made upon unlawful procedure; or

 (d) affected by other error of law; or

 (e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or

 (f) arbitrary or capricious.

## CLEARLY ERRONEOUS

We first consider whether or not this matter should be reviewed under the "clearly erroneous" test. In *Ancheta v. Daly,* 77 Wn.2d 255, 259–60, 461 P.2d 531 (1969), the Supreme Court, in adopting the federal definition of "clearly erroneous" said, "'[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Citing United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948). The court in *Ancheta v. Daly, supra,* stated that this exception represents an expansion of the old "substantial evidence" test in evaluating a lower tribunal's findings of fact, and must include consideration of the public policy of the act pursuant to which the regulation was promulgated.

 Chemithon argues that the Board interpretation of section 9.03(e) to require removal of *all* particulate matter before the exception would obtain is "clearly erroneous." PSAPCA contends that the "clearly erroneous" test is inapplicable in this circumstance. PSAPCA correctly urges that Chemithon is questioning the facts found by the Board and the trial court, as well as the interpretation given by them to section 9.03(e) of regulation 1. A mixed question of law and fact is raised. This court must determine whether

the Board determination is "affected by other error at law." This is the proper standard for review of a mixed question of law and fact. *Property Holding & Dev., Inc. v. Department of Employment Security,* 15 Wn. App. 326, 332, 549 P.2d 58 (1976), *citing Department of Revenue v. Boeing Co.,* 85 Wn.2d 663, 667, 538 P.2d 505 (1975).

## ERROR OF LAW

Chemithon claims that there was error of law committed in the interpretation of the regulations. It contends that before there can be a violation of the visual opacity standards, the regulations require a finding of a violation of the substantive standard. PSAPCA contends that the clear language of the regulation will not allow Chemithon's interpretation and that the substantive standards are irrelevant.

Arguments are presented by Chemithon and PSAPCA that public policy of the clean air act support their respective positions. We need not analyze the public policy of the act. The statute, RCW 70.94.030(1) defines *"air contaminants"* as "dust, fumes, mist, *smoke,* other particulate matter, vapor, gas, odorous substance, or any combination thereof." (Italics ours.) Any smoke emission is an "air contaminant" within the purview of the statute.

Chemithon contends that so long as the nonwater contaminants were within the substantive standards and the opacity is caused primarily by the steam, the exception should apply.

The regulations permit uncombined water plumes above the opacity limitations. Particulate matter may still be present in the plume, so long as section 9.03(e) is met: *viz.,* when uncombined water is the *only* reason for the violation of the visual opacity standards. The exception will not apply unless the violator of the opacity standards can show that *all* contaminants but water had been removed.

There has been no "error of law" by the Board or by the trial court.

## Due Process

■ Chemithon contends that due process was violated because it was not given notice before the visual opacity readings were taken by the PSAPCA inspectors. Reliance is placed on various criminal cases having to do with search and seizure, and *Air Pollution Variance Bd. v. Western Alfalfa Corp.*, ___ Colo. ___, 553 P.2d 811 (1976). This precise due process issue is cogently resolved by the Colorado Supreme Court, contrary to Chemithon's position:

> Due process contemplates that notice should be given of a visual opacity reading by [PSAPCA] within a reasonably short period of time following the completion of the inspection. Because surprise may play a crucial role in the course of some inspections, we do not require prior or contemporary notice of the inspection. Basic fairness is achieved in this context by delivering actual notice to a plant manager or officer or agent thereof within a short period of time following the inspection. In this manner, the agency responsible for enforcing the law will simultaneously demonstrate its willingness to protect the rights of citizens, and, hopefully, the result will be increased cooperation and conciliation between regulatory bodies and those affected by the regulations.

(Citation omitted.) *Air Pollution Variance Bd. v. Western Alfalfa Corp., supra* at 816.

Chemithon does not contend that there was a failure to give notice within a reasonably short period of time after each of the opacity readings by the PSAPCA inspector.

## Decision

The decisions of the Board finding Chemithon in violation of PSAPCA regulation 1, section 9.03 were not affected by any error of law.

To establish a violation of PSAPCA regulations by observations of smoke emissions from a public area without prior notice to the operator of the plant does not violate the due process clause of the Washington State Constitution, article 1, section 3.

The trial court's judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.

Reconsideration denied June 22, 1978.

Review denied by Supreme Court December 1, 1978.