## No. C-682

**Air Pollution Variance Board of the State of Colorado v. Western Alfalfa Corporation, a Kansas corporation**

(553 P.2d 811)

Decided August 23, 1976.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, David W. Robbins, First Assistant, Natural Resources Section, Gregory J. Hobbs, Jr., Assistant, Natural Resources Section, for petitioner.

Houtchens, Houtchens & Dooley, S. Robert Houtchens; Linde, Thomson, Van Dyke, Fairchild, Longworth & Kohn, George D. Blackwood; Kelly, Stansfield & O'Donnell, Donald D. Cawelti, for respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

In this petition, the Air Pollution Variance Board of the State of Colorado seeks to overturn a decision of the Court of Appeals which held that the respondent, Western Alfalfa Corporation, was denied due process of law in a hearing before the board. *Western Alfalfa Corp. v. Air Pollution Variance Board*, 510 P.2d 907 (Colo. App. 1973) (Not Selected for Official Publication). The sole issues now before us relate to the requirement of notice in visual opacity inspections and the validity of the

visual opacity testing method.

The history of this case is long and complicated. On June 4, 1969, a field inspector of the Colorado Department of Health (Division of Administration) entered the premises of three Western Alfalfa Corporation plants (located in Windsor, Berthoud, and Eaton) for the purpose of determining whether the corporation was violating the air pollution control laws of the state. Representatives of the Department of Health had been engaged in conference and conciliation efforts with officials of Western Alfalfa Corporation since September 1967 in regard to air pollution violations. In the course of the inspection conducted on June 4, 1969, the inspector concluded that the three plants were in violation of state emission regulations. The law then in effect prohibited emissions which were in excess of a Number 2 on the Ringelmann Chart, or 50% equivalent opacity, for a time period longer than three consecutive minutes in any one hour. 1967 Perm. Supp., C.R.S. 1963, 66-29-5. The inspector made the following record of violations:

1. Windsor Plant
 Dryer — 90% opacity
 Grinder — 70% opacity
 Pelletizer — 50% opacity
2. Eaton Plant
 Dryer — 85% opacity
 Grinder — 70% opacity
 Pelletizer — 50% opacity
3. Berthoud Plant
 Dryer — 90% opacity
 Grinder — 50% opacity
 Pelletizer — 40% opacity

After making the readings, the inspector left the plants and did not notify anyone connected with Western Alfalfa Corporation of his presence or observations. Two weeks later, on June 17, 1969, Western Alfalfa Corporation received a cease and desist order from the Colorado Department of Health (Division of Administration) — their first notice of the fact that the inspection had occurred. Western Alfalfa filed a request for review with the Air Pollution Variance Board, and the enforceability of the cease and desist order was automatically stayed. 1967 Perm. Supp., C.R.S. 1963, 66-29-10.[1]

A hearing was held before the variance board, and the inspector who conducted the inspection on June 4, 1969, was present and testified. The variance board found that the corporation violated the Colorado Air Pollution Control Act and affirmed the cease and desist order which had been

---

[1]Now section 25-7-113(4)(c), C.R.S. 1973.

issued by the Department of Health. A petition for review was filed by Western Alfalfa Corporation. An injunction and/or civil penalties for air pollution violations cannot be obtained except for a violation of a final cease and desist order which is not subject to stay pending administrative or judicial review. 1967 Perm. Supp., C.R.S. 1963, 66-29-15 and 66-29-14.[2]

The district court of Weld County reversed the variance board finding against Western Alfalfa Corporation and then, in the first Court of Appeals' opinion, the district court decision was upheld. *Western Alfalfa Corp. v. Air Pollution Variance Board, supra.* The Court of Appeals, in that opinion, held that the health department had violated the Fourth Amendment to the United States Constitution by making the inspection without consent or a warrant. After this court denied the variance board's petition for writ of certiorari, a similar petition was granted by the United States Supreme Court. *Air Pollution Variance Board v. Western Alfalfa Corp.*, 414 U.S. 1156, 94 S.Ct. 913, 39 L.Ed.2d 108 (1974). The United States Supreme Court ruled that the plain view doctrine permits an air pollution inspector to proceed without consent or warrant onto the publicly accessible portions of private premises for the purpose of observing emissions from a smoke stack. *Air Pollution Variance Board v. Western Alfalfa Corporation*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974). The Court remanded the case to the Colorado Court of Appeals for the resolution of any further issues which required consideration.

Thereafter, the Court of Appeals issued its second opinion in this case. *Western Alfalfa Corp. v. Air Pollution Variance Board*, 35 Colo. App. 207, 534 P.2d 796 (1975). In the second opinion, the Court of Appeals held:

"[T]hat where the real evidence of a violation does by its nature exist only temporarily and where that evidence can be preserved only through the subjective observations of an employee of the agency, the fundamental fairness requirement of due process dictates that the alleged violator, whether individual or corporate, must, in an administrative proceeding, be given notice of the fact that evidence is being gathered and be afforded a reasonable opportunity to be present or otherwise be provided with an adequate opportunity to gather similar probative evidence."

We granted certiorari and now affirm the Court of Appeals.

## I.
### *Validity of the Testing Method*

Respondent, Western Alfalfa Corporation, has asked this court to review the constitutionality of Colorado's visible emissions standard, alleging that the opacity test is inaccurate and unfair. Both the District Court and

---

[2]Now sections 25-7-118 and 25-7-119, C.R.S. 1973.

the Court of Appeals have resolved this question against the respondent.

At the time of the violations, the former Air Pollution Control Act, 1967 Perm. Supp., C.R.S. 1963, 66-29-1, *et seq.*, prescribed two methods for determining whether a violation of Colorado's air quality standards had occurred. Section 66-29-5(2)(b) proscribed the discharge into the atmosphere of a contaminant "as dark or darker than the shade as that designated as No. 2 on the Ringelmann Chart . . ." Section 66-29-5(2)(c) provided that no contaminant shall be discharged into the atmosphere "of opacity equal to or greater than smoke described in Paragraph (b) of this subsection" (referring to shades as dark or darker than No. 2 on the Ringelmann Chart). In other words, the latter section established an "equivalent opacity" standard, making it unlawful to discharge any contaminant more opaque than its equivalent on the Ringelmann Chart. The Ringelmann Chart is applicable to black or very dark smoke, whereas the equivalent opacity standard is applicable to white smoke. The Ringelmann Chart is used to evaluate the color of the smoke, and the equivalent opacity technique is used to evaluate the amount of light which passes through a non-black emission. A visual opacity reading may be made without the aid of the Ringelmann Chart.

The respondent was charged with a violation of the equivalent opacity standard, 1967 Perm. Supp., C.R.S. 1963, 66-29-5(2)(c). At that time, a 40% opacity limitation was in effect.[3]

Respondent argues, and petitioner concedes, that equivalent opacity is not directly correlated to the density, volume, or amount of particulate matter being carried in the emission. Nevertheless, the opacity standard provides an accurate reflection of the amount of visible contaminants being carried in a smoke plume. The public enjoyment of the air resources of this state is a stated legislative objective of the Air Pollution Control Act. *See* 1967 Perm. Supp., C.R.S. 1963, 66-29-2. This objective is partially realized not only when the volume of particulate matter is reduced, but also when maximum visual clarity is achieved in any given air space.

The validity of equivalent opacity tests has been upheld against constitutional attack in numerous cases. *See Portland Cement Association v. Train*, 513 F.2d 506 (D.C. Cir. 1975); *City of Portland v. Lloyd A. Fry Roofing Company*, 3 Ore.App.352, 472 P.2d.826 (1970); *People v. International Steel Corp.*, 102 Cal.App.2d Supp. 935, 226 P.2d 587 (1951); *Annot. Air Pollution: Evidence as to Ringelmann Chart Observations*, 51 A.L.R.3d 1026.

---

[3]Under Regulation 1-I.A.1 of the Air Pollution Control Commission, the 40% limitation has been tightened to 20%.

In *City of Portland v. Lloyd A. Fry Roofing Company*, 3 Ore.App. 352, 472 P.2d 826 (1970), the Oregon Court of Appeals approved the following language:

"And there is no mystery in such standards as opacity and obscuration. Surely it needs no expertise for defendant's officials, or anyone else, for that matter, to know that one can see half or less of the West Hills, Mt. Hood, or St. John's Bridge because of the presence of a plume of smoke. Nor does it take a post-graduate course or a Ph.D. to realize that this would 'unreasonably interfere with enjoyment of life' of the people of Portland."

One assailing the constitutionality of a statute bears a heavy burden of proof. *Lloyd A. Fry Roofing Company v. State Department of Health Air Pollution Variance Board*, 179 Colo. 223, 499 P.2d 1176 (1972); *Department of Health v. Owens-Corning Fiberglass Corp.*, 100 N.J.Super. 366, 242 A.2d 21 (1968). Western Alfalfa Corporation has failed to demonstrate that the visual opacity testing method is so arbitrary or capricious as to render it unconstitutional in the eyes of the law.

This court has reviewed the theory of equivalent opacity, particularly as the testing method is affected by such variables as cloud cover, time of day, humidity, atmospheric haze, wind velocity, compactness or diameter of the column of smoke, and position of the observer in relation to the source of available light. We have reviewed the smoke school certification procedures and the qualifications of the observer who conducted the inspection in this case. On the basis of this review, we conclude that the accuracy of equivalent opacity readings has been sufficiently well established to permit their introduction into evidence. The Department of Health smoke readers are certified at smoke reading schools to make readings with no more than 7.5% average margin of error. The readings taken at the three plants here in issue were all well within the 7.5% margin of error factor.

Western Alfalfa Corporation claims that the inspector's observations may be invalidated by the presence of uncombined water (steam), and non-contaminant, in the smoke plume. The record shows, however, that two of the three emission sources at each plant did not produce uncombined water, and that the inspector read the other plumes past the "break point" where the visible water vapor had evaporated back into the ambient air. "Wet plume" violations have been upheld by other courts. *Lloyd A. Fry Roofing Co. v. State*, 524 S.W.2d 313 (Tex.Civ.App. 1975); *Lloyd A. Fry Company v. Utah Air Conservation Comm.*, Utah, 545 P.2d 495 (1975); *City of St. Louis v. Eskridge*, 486 S.W.2d 648 (Mo.App. 1972), and we believe the technique which was used to evaluate smoke plumes was relevant and permitted testimony as to such readings.

For purposes of a hearing before the Air Pollution Variance Board, the results of a visual opacity inspection are wholly relevant and

admissible. Any question as to the method of conducting the inspection, the qualifications of the inspector or the reliability of the testing procedure rests in the sound discretion of the trier of fact. In our opinion, visual opacity tests meet minimal due process standards and are not so arbitrary or capricious as to foreclose the finding of a violation based upon such tests alone.

II.

### Right to Notice of Inspection

Petitioner alleges that the Court of Appeals erred in its holding and that procedural due process and fundamental fairness do not demand that the evidence of the opacity readings in this case be excluded because of the lack of timely notice to the company. We disagree.

At the time of the alleged violation, the Air Pollution Control Act permitted a decision of the variance board to be based upon evidence obtained in three minutes of any hour. 1967 Perm. Supp., C.R.S. 1963, 66-29-5(2)(a). Proof of the violation that allegedly occurred on June 4, 1969, was based entirely on the uncorroborated testimony of the Department of Health inspector who conducted the inspection. Almost two weeks passed before Western Alfalfa Corporation was notified of the fact that the inspection had been conducted on or near its premises.

Without doubt, the investigation which the Department of Health conducted on June 4 was a "secret investigation." Although secrecy and surprise play a major role in many types of governmental investigations, we are not persuaded that any useful purpose was served by maintaining the cloak of secrecy for days and weeks following the completion of this investigation. The investigative efforts of the Department of Health would not have been unreasonably hampered if notice had been given immediately after each inspection. On the contrary, the only objective served by such delay is to make it increasingly difficult as time passes by for Western Alfalfa to challenge the validity of the inspector's observations and to secure meaningful rebuttal evidence.

In *Morgan v. United States*, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938), the Supreme Court stated that "in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play." The due process clause of our state constitution, Article II, Section 25, requires at a minimum the same guarantees as those protected by the due process clause of the federal constitution. Concepts of fairness vary depending in part upon the type of proceeding involved and the interests at stake. In this proceeding, the evidence viewed by the inspector was continually disappearing. Although the inspector utilized a scientifically valid testing method in analyzing the emissions from Western Alfalfa's plants, his opinions remain at best "estimates," based upon his relative experience and training. These estimates may be affected by many variables, such as the

direction and speed of the wind, the time of day, the nature of the ambient air, and the position of the observer in relation to the source of the emission. To accurately test the recollection and opinion of the visual opacity inspector, one would necessarily take close account of any natural or subjective circumstances surrounding the particular reading. By delaying notice of the inspection, the Department of Health reduced the ability of the company to offer meaningful rebuttal evidence.

Certainly, the company may be able to prove compliance with the law on a date two weeks or two months following the alleged violation, but this hardly serves to rebut the allegation that the law was violated by the company for a three-minute period of time on June 4, 1969. In short, the delay of notice all but forecloses the opportunity to successfully challenge the findings of the inspector.

 Due process contemplates that notice should be given of a visual opacity reading by the Department of Health within a reasonably short period of time following the completion of the inspection. Because surprise may play a crucial role in the course of some inspections, we do not require prior or contemporary notice of the inspection. Basic fairness is achieved in this context by delivering actual notice to a plant manager of officer or agent thereof within a short period of time following the inspection. In this manner, the agency responsible for enforcing the law will simultaneously demonstrate its willingness to protect the rights of citizens, and, hopefully, the result will be increased cooperation and conciliation between regulatory bodies and those affected by the regulations. *See generally*, Comment, *Requirement of Notice in Visual Opacity Readings*, 51 D.L.J. 603 (1974).

Accordingly, the decision of the Colorado Court of Appeals is affirmed.